UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCOTT HASTINGS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　Case No: 2:17-cv-507-FtM-38CM

CITY FORT MYERS, DOUGLAS
BAKER, STEPHEN RUSSELL,
DENNIS EADS, MIKE SCOTT,
EMILY DESTEPHANIS, JUSTIN
TRASK, RICHARD ERRETT and
STEPHANIE RUSSELL,

    Defendants.
_____/

## **OPINION AND ORDER**[1]

This matter comes before the Court on Defendants City of Fort Myers and Douglas Baker's Motion to Dismiss (Doc. 30) filed on November 6, 2017. Hastings filed a Response in Opposition to multiple motions to dismiss (Doc. 33) on January 9, 2018. The Motion is now ripe for the Courts review.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

## BACKGROUND[2]

On July 13, 2013, a Marital Settlement Agreement was executed between Hastings and his estranged wife. On July 30, 2013, Hastings contacted the Fort Myers Police Department (FMPD) to escort him to retrieve property from the marital residence. (Doc. 1 at 5). Two uniformed FMPD officers, including Defendant Trask, arrived at the residence to accompany him. (Doc. 1 at 5). Hastings entered the residence and obtained his personal belongings and six file drawers of business records. (Doc. 1 at 5). His estranged wife returned to the marital residence while he was present. An argument ensued. (Doc. 1 at 5).

The next day, Hastings' estranged wife filed for a temporary restraining order (TRO) in Lee County Court. On August 2, 2013, a verbal altercation occurred between FMPD Officers Trask and Errett when they served Hastings with the TRO. (Doc. 1 at 6). The following night, Hastings was arrested for violating the TRO and booked into the Lee County Jail. (Doc. 1 at 6). He suffered atrial defibrillation and received medical treatment. The next day he posted a $10,000 bond. (Doc. 1 at 6). Hastings left the State of Florida, travelled to Austin, Texas, and eventually returned home to Indian Wells, California. On August 23, 2013, attorney Joe Viacava sent Hastings an e-mail stating that his case had been dismissed. (Doc. 1 at 7).

Hastings contacted FMPD and spoke with Captain Dennis Eads alleging that his estranged wife had hacked his e-mail account. After an investigation into the alleged

---

[2] For purposes of the City's and Douglas Baker's Motion to Dismiss, the Court assumes as true the facts as alleged in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

hacking by Captain Melvin Perry, the FMPD found no evidence of wrong doing. ([Doc. 1 at 7](#)).

In September 2014, Hastings started receiving "Private Number Blocked Calls" on his cell phone from his estranged wife. ([Doc. 1 at 8](#)). That same month, he was told that he needed open heart surgery to correct his heart issues. In October of 2014, he was diagnosed with cancer and had surgery to remove the melanoma. ([Doc. 1 at 8](#)).

While Hastings was recuperating from his surgery, he was contacted by representatives from the Dr. Phil Show because of his estranged wife's contact with them. On November 1, 2013, Stephanie Granander forwarded him a waiver of the TRO sent by his estranged wife so they could appear together on the program. And, his estranged wife told him he could start telephone and Skype contact with his twelve-year-old daughter. ([Doc. 1 at 8](#)). Hastings and his daughter began Skyping daily. ([Doc. 1 at 8](#)). He states the blocked calls continued in November 2013.

The Dr. Phil Show also contacted Hastings' minor daughter to entice her to appear on a daddy/daughter reunion birthday show if he would appear with her on November 29, 2013. ([Doc. 1 at 10](#)). Hastings returned to Austin, Texas on November 17, 2013, his daughter's birthday. He states he received about seventeen private blocked phone calls from an unknown party. Hastings returned to Fort Myers, Florida, to pack up his manufacturing plant. He saw his estranged wife's car in a bar's parking lot with a flat tire at approximately 8:00am on Sunday morning. Hastings returned to Indian Wells, California on November 26, 2013.

On December 5, 2013, Hastings informed the Dr. Phil Show he was not interested in any attempt to reconcile his marriage. On December 31, 2013, Hastings' estranged

wife cancelled his health insurance after his preauthorization for open-heart surgery. On January 4, 2014, Hastings filed an ethics complaint with the American Dietetic Association, alleging that his estranged wife purchased a bogus masters and doctorate degree.

On January 14, 2014, Defendant DeStephanis filed an affidavit and request for an arrest warrant before a Lee County Court Judge, for Hastings' violation of the final injunction order for protection from November 1, 2013 through January 4, 2014. Two days later, Hastings was arrested in New Port Beach, California. (Doc. 1 at 12). He was booked into the Orange County California Jail and was given a $15,000.00 bond as the no bond warrant could not be located in the system. (Doc. 1 at 12).

On January 24, 2014, Hastings left a message on State Attorney Steven Russell's cell phone. He informed Russell that his arrest and the allegations that led to it were due to his estranged wife's retaliation for his decision not to reconcile their marriage. Hastings was scheduled to appear in Orange County California Court on March 20, 2014. After he was informed that Lee County Sheriff Mike Scott had a Governor's warrant for his arrest, he went into atrial fibrillation. (Doc. 1 at 12). Hastings was taken to Western Medical Center where they ran tests on his heart valve. He was denied any surgical procedures and returned to the jail's medical unit. (Doc. 1 at 13).

On April 5, 2014, Hastings was discharged from the Orange County California Jail and turned over to a transport company hired by Sheriff Mike Scott to return him to Lee County. While in route through Denver, Colorado, he began hemorrhaging blood in the transportation vehicle. (Doc. 1 at 13). While in upstate New York he suffered chest pains and heart issues and was transported to St. Mary's Hospital in New York. After being

given an EKG, nitroglycerin, and beta blockers, Hastings was transported to Lee County, Florida. He lost thirty-six pounds during the transport from California to Florida.

On April 21, 2014, Hastings had his first appearance on charges of stalking his minor daughter. ([Doc. 1 at 14](#)). The State Court set a bond of $100,000.00 on the stalking charge and an additional $50,000 bond for aggravated stalking of his estranged wife. ([Doc. 1 at 14](#)).

Hastings wrote to Sheriff Mike Scott detailing his treatment during his transportation from California. He asked for a copy of the final injunction for protection from the Domestic Violence Supervisor. ([Doc. 1 at 15](#)). After his inquiry, he was served with a final injunction on April 30, 2014. ([Doc. 1 at 15](#)).

On May 25, 2014, Hastings' thoracic surgeon in California wrote a letter to Judge Bruce Kyle stating that Hastings was a high risk of immediate death and needed open heart surgery. ([Doc. 1 at 15](#)). On June 9, 2014, he was released on a $75,000.00 bond and returned to California. Hastings returned to Florida on July 25, 2014, and was arrested by Russell for traveling to California. ([Doc. 1 at 15](#)). On August 6, 2014, his $150,000.00 bond was reinstated and he was fitted with an ankle monitor by Russell. ([Doc. 1 at 15](#)).

On August 7, 2014, Hastings traveled to Seattle, Washington in search of a hospital that would perform his open-heart surgery without his having health insurance. While in Seattle, his ankle monitor battery died for approximately twenty minutes. ([Doc. 1 at 15](#)). Hastings returned to Lee County on August 26, 2014, and was arrested by Russell for having his ankle monitor die while he was in Seattle. ([Doc. 1 at 16](#)). He was given another $150,000.00 bond.

Then on August 15, 2014, Russell had Hastings arrested for violating the no contact order for contacting his minor daughter's caregiver. (Doc. 1 at 16). Hastings was arrested and remanded to custody without bond awaiting trial. (Doc. 1 at 15). On October 22, 2014, Russell *nolle prossed* the aggravated stalking charge that arose from his January 16, 2014 arrest. (Doc. 1 at 16). On October 22, 2014, Hastings pled guilty — as part of a plea agreement — to aggravated stalking of his estranged wife and was placed on forty-eight months of probation. (Doc. 1 at 16). He asserts he did not voluntarily enter into the plea deal.

In January of 2015, Hastings travelled to San Diego and had open-heart surgery. In July of 2015, he subpoenaed Godaddy.com and discovered that his e-mail box was illegally hacked by his estranged wife, parents, sister, and brother in law from May 2013 through November 2013. Hastings found out in October of 2016 that FMPD Officer Errett falsified the Governor's Warrant in 2014, by stating that he served Hastings with the final injunction for protection on August 20, 2013 at 17:00pm.

In October of 2016, Hastings filed a sworn complaint with the FBI against Sheriff Mike Scott, Richard Errett, Russell, and Officer Dennis Eads for false arrest and violations of his Fourth and Fourteenth Amendment rights. On September 6, 2017, Hastings filed this case.

## **STANDARD OF REVIEW**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *Christopher v Harbury*, 536 U.S. 403, 406 (2002). Conclusory allegations, however, are not entitled to

a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (discussing a 12(b)(6) dismissal).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir.2010). A claim is plausible where the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See *Twombly,* 550 U.S. at 545. And there is no longer a heightened pleading requirement. *Randall,* 610 F.3d at 701. Because Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than pleadings drafted by an attorney and will be liberally construed. *Hughes v. Lott,* 350 F.3d 1157, 1160 (11th Cir.2003) (citing *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998)).

## **DISCUSSION**

Hastings asserts that Baker and the City of Fort Myers along with the other Defendants in this case conspired together to violate his constitutional rights. Baker and the City of Fort Myers argue Count VI fails to state a claim because there are no allegations that the City or Baker engaged in any act in furtherance of unlawfully seizing, detaining, or maliciously prosecuting him.

To establish a prima facie case of a § 1983 conspiracy, a plaintiff must show that "the defendants reached an understanding to deny the plaintiff's rights." *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir.2008) (citing *Bendiburg v. Dempsey,* 909 F.2d 463, 469 (11th Cir.1990)). And the plaintiff must show "an underlying actual denial of [his] constitutional rights." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1237 (M.D. Fla. 2008) (quoting *Hadley,* 526 F.3d at 1332). Finally, to allege a conspiracy under § 1983, a plaintiff must make "particularized allegations" that a conspiracy exists. *GJR Invs. v. County of Escambia, Fla.,* 132 F.3d 1359, 1370 (11th Cir. 1998) (modified by *Swann v Southern Health Partners, Inc.*, 388 F. 3d 834, 837 (11th Cir. 2004) holding that the heightened pleading requirement does not apply to private entities under § 1983). Vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient. *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984).

Here Hastings' Complaint simply states the Defendants acted in concert and conspired with one another to detain, seize, and maliciously prosecute him. The Complaint assert no facts showing that Defendants agreed to deny his rights and there are insufficient facts from which an inference of a conspiracy can reasonably be drawn.

Because Hastings' conspiracy claims are conclusory without a particularized allegations to support the claim, Count VI is due to be dismissed.

Accordingly, it is now

**ORDERED:**

Defendants City of Fort Myers and Douglas Baker's Motion to Dismiss ([Doc. 30](Doc. 30)) is **GRANTED**. The Defendants City of Fort Myers and Douglas Baker are **DISMISSED** without prejudice.

**DONE** and **ORDERED** in Fort Myers, Florida this 27th day of June, 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record
SA: FTMP-2