UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID SCOTT HASTINGS,

      Plaintiff,

v.                                      Case No: 2:17-cv-507-FtM-38UAM

DENNIS EADS, EMILY
DESTEPHANIS and JUSTIN
TRASK,

      Defendants.
_____/

## **OPINION AND ORDER**[1]

Before the Court is Defendants Dennis Eads, Emily Destephanis, and Justin Trask's Motion to Dismiss (Doc. 41) filed on July 11, 2018. No response in opposition was filed.

## **BACKGROUND**

On July 13, 2013, a Marital Settlement Agreement was executed between the Plaintiff and his estranged wife. On July 30, 2013, Plaintiff contacted the Fort Myers Police Department (FMPD) to escort him to retrieve property from the marital residence. (Doc. 1 at 5). Two uniformed FMPD officers, including Defendant Trask, arrived at the marital residence to accompany Plaintiff. (Doc. 1 at 5). Plaintiff entered the residence

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

and obtained his personal belongings and six file drawers of business records. (Doc. 1 at 5). Plaintiff's estranged wife returned to the marital residence while he was still present, and an argument ensued. (Doc. 1 at 5).

The next day, Plaintiff's estranged wife filed for a temporary restraining order (TRO) in the County Court in and for Lee County, Florida. On August 2, 2013, Officer Trask and Officer Errett of the FMPD served Plaintiff with the TRO. A verbal altercation occurred between Plaintiff and the FMPD Officers. (Doc. 1 at 6). The following night, Plaintiff was arrested for violating the TRO and was booked into the Lee County Jail. (Doc. 1 at 6). Plaintiff suffered atrial defibrillation and received medical treatment. The next day Plaintiff bonded out on $10,000 bond. (Doc. 1 at 6). Plaintiff left the State of Florida and travelled to Austin, Texas. From there, Plaintiff returned to his home in Indian Wells, California. On August 23, 2013, Plaintiff's attorney Joe Viacava sent him an e-mail stating that his case had been dismissed. (Doc. 1 at 7).

Plaintiff contacted FMPD and spoke with Capt. Dennis Eads alleging that his estranged wife had hacked his e-mail account. Eads informed Plaintiff that Capt. Perry of the FMPD investigated the hacking allegations and found no evidence of wrong doing. (Doc. 1 at 7-8). Plaintiff contacted Capt. Perry about the investigation and Capt. Perry informed him that Capt. Eads never asked him to investigate the hacking allegations. (Doc. 1 at 8).

In September 2014, Plaintiff says that he started receiving "Private Number Blocked Calls" on his cell phone from his estranged wife. (Doc. 1 at 8). Further, that same month Plaintiff was told that his heart test came back showing that he needed open heart

surgery to correct his heart issues. Plaintiff states that he was also diagnosed with cancer. ([Doc. 1 at 8](Doc. 1 at 8)). In October of 2014, Plaintiff had surgery on his head to remove the melanoma.

Plaintiff said that while he was recuperating from his cancer surgery, representatives from the Dr. Phil Show contacted him about appearing on the television program. Plaintiff alleges that his estranged wife had contacted the Dr. Phil Show. On November 1, 2013, Stephanie Granander sent Plaintiff a waiver of the TRO sent by his estranged wife so they could appear together on the program. Plaintiff's estranged wife also told him that he could start telephone and Skype contact with his twelve-year-old daughter. ([Doc. 1 at 8](Doc. 1 at 8)). Plaintiff says that he contacted his daughter and they began Skyping daily. ([Doc. 1 at 8](Doc. 1 at 8)). Plaintiff says he and his daughter read from a book every night as part of her school work.

Plaintiff alleges that the Dr. Phil Show contacted his minor daughter to entice her to appear on a daddy daughter reunion birthday show if Plaintiff would agree to appear on the show scheduled for November 29, 2013. ([Doc. 1 at 10](Doc. 1 at 10)). Plaintiff states that he returned to Austin, Texas on November 17, 2013, for his daughter's birthday. Plaintiff again alleges that he received about seventeen private blocked phone calls from an unknown party at this time. Plaintiff then states he returned to Fort Myers, Florida, to pack up his manufacturing plant. Plaintiff moved his production materials into a storage unit in Clearwater, Florida, and returned to Indian Wells, California or November 26, 2013.

On December 5, 2013, Plaintiff informed the Dr. Phil Show that he was not interested in any attempt to reconcile his marriage. On December 31, 2013, Plaintiff's estranged wife cancelled his health insurance after preauthorization for open heart

surgery set for January 21, 2014, was approved. On January 4, 2014, Plaintiff filed an ethics complaint with the American Dietetic Association, for an allegation that his estranged wife purchased bogus masters and doctorate degrees.

On January 14, 2014, Officer DeStephanis filed an affidavit in front of Judge Josephine Gagliardi, Lee County Court Judge, for the arrest of the Plaintiff for violating the final injunction order for protection from November 1, 2013 through January 4, 2014. On January 16, 2014, U.S. Marshals and Orange County, California deputies arrested Plaintiff in New Port Beach, California. ([Doc. 1 at 12](#)). Plaintiff was booked into the Orange County California Jail on a no bond warrant. Plaintiff was given a $15,000.00 bond by an Orange County California Judge as the no bond warrant could not be found in the system. ([Doc. 1 at 12](#)).

On January 24, 2014, Plaintiff called State Attorney Steven Russell and left a message on his cell phone. Plaintiff states that he informed Russell about his arrest and the allegations that led to his arrest were all due to his estranged wife's retaliation for his decision to not reconcile the marriage. Plaintiff was scheduled to appear in Orange County California Court on March 20, 2014. He was informed that Lee County Sheriff, Mike Scott, had a Governor's warrant for his arrest. ([Doc. 1 at 12](#)). Plaintiff alleges that he went into atrial fibrillation and passed out after hearing the news. ([Doc. 1 at 12](#)). Plaintiff was taken to Western Medical Center where they ran tests on his heart valve.

On April 5, 2014, Plaintiff was discharged from the Orange County California Jail and turned over to a transport company hired by Sheriff Mike Scott for return to Lee County. Plaintiff states that while in route, he began hemorrhaging blood in the transportation vehicle while in Denver, Colorado. ([Doc. 1 at 13](#)). While in upstate New

York Plaintiff had chest pains and heart issues and was transported to St. Mary's Hospital in New York. After being given an EKG, nitroglycerin, and beta blockers, Plaintiff was placed back in the transportation van and taken to Lee County, Florida. Plaintiff claims that he lost thirty-six pounds on his journey from California to Lee County, Florida.

On April 21, 2014, Plaintiff appeared for his first appearance on charges of stalking his minor daughter. ([Doc. 1 at 14](#)). The State Court placed a bond of $100,000.00. Plaintiff was further charged with aggravated stalking of his estranged wife and the State Court set bond at $50,000.00. ([Doc. 1 at 14](#)).

Plaintiff wrote to Sheriff Mike Scott detailing his treatment during his transportation from California. Plaintiff states that he asked for a copy of the final injunction for protection from the Domestic Violence Supervisor. ([Doc. 1 at 15](#)). Plaintiff says, after inquiring about the final injunction, he was served with the final injunction on April 30, 2014. ([Doc. 1 at 15](#)).

On May 25, 2014, Plaintiff's thoracic surgeon in California wrote a letter to Judge Bruce Kyle stating that Plaintiff was a high risk of immediate death and needed open heart surgery. ([Doc. 1 at 15](#)). On June 9, 2014, Plaintiff was released on a $75,000.00 bond and returned to California. Plaintiff returned to Florida on July 25, 2014, was arrested by Russell for traveling to California. ([Doc. 1 at 15](#)). On August 6, 2014, Plaintiff's bond was reinstated in the amount of $150,000.00 and he was fitted with an ankle monitor by Russell. ([Doc. 1 at 15](#)).

On August 7, 2014, Plaintiff traveled to Seattle, Washington in search of a hospital that would perform his open-heart surgery without his having health insurance. While in Seattle, Plaintiff alleges that his ankle monitor battery died for approximately twenty

minutes. (Doc. 1 at 15). Plaintiff returned to Lee County on August 26, 2014 and was arrested by Russell for having his ankle monitor die while he was in Seattle. (Doc. 1 at 16). Plaintiff was given another $150,000.00 bond.

Then on August 15, 2014, Russell had Plaintiff arrested and charged him with violating the no contact order by contacting Darla Betzer, a caregiver for his minor daughter. (Doc. 1 at 16). Plaintiff was arrested and remanded to custody without bond awaiting trial. (Doc. 1 at 15). On October 22, 2014, Russell *nolle prossed* the aggravated stalking charges that arose from his January 16, 2014 arrest. (Doc. 1 at 16). On October 22, 2014, Plaintiff pled guilty — as part of a plea agreement — to aggravated stalking charges on his estranged wife and was placed on forty-eight months of probation. (Doc. 1 at 16). Plaintiff argues that he did not voluntarily enter the plea deal.

Plaintiff travelled to San Diego and had heart surgery in January of 2015. In July of 2015, Plaintiff says he subpoenaed his corporate provider Godaddy.com and discovered that his e-mail box was illegally hacked by his estranged wife, parents, sister, and brother in law from May 2013 through November 2013.

Plaintiff states that Deputy Errett falsified the Governor's Warrant in 2014, by stating that he served Plaintiff with the final injunction for protection on August 20, 2013 at 17:00pm. In October of 2016, Plaintiff filed a sworn complaint with the FBI against Sheriff Mike Scott, Richard Errett, Russell, and Officer Dennis Eads for false arrest and violations of his Fourth and Fourteenth Amendment rights. On September 6, 2017, Hastings filed the instant case.

## **STANDARD OF REVIEW**

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *Christopher v Harbury*, 536 U.S. 403, 406 (2002). Conclusory allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009) (discussing a 12(b)(6) dismissal).

The Court employs the *Twombly–Iqbal* plausibility standard when reviewing a complaint subject to a motion to dismiss. *Randall v. Scott,* 610 F.3d 701, 708, n. 2 (11th Cir.2010). A claim is plausible where the plaintiff alleges facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007). Specifically, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Thus, "the-defendant-unlawfully harmed me accusation" is insufficient. *Iqbal,* 556 U.S. at 677. "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* The "[f]actual allegations must be enough to raise a right to relief above the speculative level." See *Twombly, 550 U.S. at 545*. Additionally, there is no longer a heightened pleading requirement. *Randall, 610 F.3d at 701*. Because Plaintiff is proceeding pro se, his pleadings are held to a less stringent standard than pleadings

drafted by an attorney and will be liberally construed. *Hughes v. Lott,* 350 F.3d 1157, 1160 (11th Cir.2003) (citing *Tannenbaum v. United States,* 148 F.3d 1262, 1263 (11th Cir.1998)).

## **DISCUSSION**

Plaintiff alleges four Counts against the Defendants: Count I, against Officer Trask for false arrest; Count II, against Capt. Eads for violation of the Equal Protection Clause; Count III, against Officer DeStephanis for false arrest and malicious prosecution; and Count VI, for civil conspiracy claim against all Defendants. The FMPD Defendants argue that the Counts against them should be dismissed because the claims in Counts I, II, III and VI fail to state a claim under § 1983.

### *Count I False Arrest by Officer Trask*

Plaintiff alleges that Officer Trask violated his civil rights when he arrested him without probable cause on August 3, 2013. Officer Trask responds that Count I fails to state a claim because it makes conclusory allegations and uses legal catch phrases to establish liability without providing a factual basis for the claims.

On August 2, 2013, Officer Trask served Plaintiff with a TRO. A verbal altercation occurred between Plaintiff and Officer Trask that night. (Doc. 1 at 6). The following night, Plaintiff was arrested by Officer Trask for violating the TRO and was booked into the Lee County Jail. (Doc. 1 at 6).

Plaintiff's Complaint provides no factual basis to support a reasonable inference that Officer Trask is liable for false arrest. *See Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009) (holding that to state a claim based on violating an established right, respondent must plead sufficient factual matter to show that petitioners adopted and implemented the

detention).  Plaintiff's Complaint only states that Trask under color of state law violated his constitutional right to be free from unlawful restraint.  Plaintiff's Complaint presents only conclusory allegations that a reasonable officer would have known better than to arrest him and deprive him of his rights.  Plaintiff never provides a factual basis for Trask's alleged violation but only makes a conclusory allegation that his rights were violated.  *See Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002) ("[C]onclusory allegations, unwarranted deductions of facts [,] or legal conclusions masquerading as facts will not prevent dismissal."); *Twombly,* 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  Plaintiff's complaint fails to allege a false arrest claim and Count I against Officer Trask is dismissed.

## Count II Officer Eads

In Count II, Plaintiff alleges that Capt. Eads violated his right to equal protection under the law.  Plaintiff says that he has a right to be protected from persons who illegally make allegations, falsify police reports, and attempt to unlawfully gain property.

The Equal Protection Clause of the Fourteenth Amendment proclaims that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. The central mandate of the equal protection guarantee is that the state may not treat classes of persons differently absent a legitimate governmental objective. *See Lofton v. Sec'y of Dep't of Children and Family Services*, 377 F.3d 1275, 1277 (11th Cir. 2004).  The purpose of the equal protection clause is "to secure every

person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). In order to plead an equal protection claim, a plaintiff must allege: (1) that he has been treated differently than "similarly situated" persons, and (2) that the discrimination is based upon a constitutionally impermissible basis, such as race, religion, national origin, or some other protected right. *Sweet v. Sec. Dept. of Corrections*, 467 F.3d 1311, 1319 (11th Cir. 2006), *cert. denied* —— U.S. —— (2007); *Jones v. Ray*, 279 F.3d 944, 946–947 (11th Cir. 2001).

The Complaint does not allege how Plaintiff is being treated differently. Plaintiff alleges that Capt. Eads lied to him about an investigation into his ex-wife's alleged e-mail hacking scheme. Plaintiff appears to claim that Capt. Eads violated his constitutional rights to equal protection by lying to him about the investigation. However, Plaintiff does not offer how he was treated differently from other similarly situated persons nor does he state he is a member of a protected class. As such, Plaintiff fails to state a valid claim for equal protection under the Fourteenth Amendment and Count II is denied.

### *Count III Officer DeStephanis*

On January 14, 2014, Officer DeStephanis filed an affidavit in front of a Lee County Court Judge, for the arrest of the Plaintiff for violating the final injunction order for protection from November 1, 2013 through January 4, 2014. Plaintiff accuses Officer DeStephanis of false arrest and malicious prosecution.

Officer DeStephanis did not arrest Plaintiff while he was in California, nor does he allege that Officer DeStephanis was involved with his arrest. Instead, Plaintiff was

arrested by Deputy U.S. Marshals and Orange County, California Sheriff's Deputies on January 16, 2014, in New Port Beach, California. (Doc. 1, at 12). An officer who did not participate in the actual arrest and who was not the arresting officer's supervisor cannot be liable for false arrest under § 1983. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010). To establish § 1983 liability, a plaintiff must show "proof of an affirmative causal connection" between a government actor's acts or omissions and the alleged constitutional violation, which "may be established by proving that the official was personally involved in the acts that resulted in the constitutional deprivation." *Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir.1986). Therefore, Officer DeStephanis who was not personally present nor involved in Plaintiff's arrest cannot be held liable for false arrest.

Plaintiff also accuses Officer DeStephanis of malicious prosecution. To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (*citing Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir.2003), *cert. denied,* 540 U.S. 879 (2003)).

Plaintiff's Complaint simply makes a conclusory allegation without providing a factual basis to support the claim that Officer DeStephanis violated his rights. Conclusory allegations without factual support are insufficient to bring a claim for malicious prosecution. *Oxford Asset Mgmt., Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir.2002) ("[C]onclusory allegations, unwarranted deductions of facts [,] or legal conclusions masquerading as facts will not prevent dismissal."). "While a complaint attacked by a

Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Twombly,* 550 U.S. at 555. Consequently, Count III against Officer DeStephanis is due to be dismissed.

### *Count VI Conspiracy*

Plaintiff alleges that all Defendants conspired together to violate his constitutional rights. To establish a prima facie case of a § 1983 conspiracy, a plaintiff must show that "the defendants reached an understanding to deny the plaintiff's rights." *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir.2008) (citing *Bendiburg v. Dempsey,* 909 F.2d 463, 469 (11th Cir.1990)). And the plaintiff must show "an underlying actual denial of [his] constitutional rights." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1237 (M.D. Fla. 2008) (quoting *Hadley,* 526 F.3d at 1332). Finally, to allege a conspiracy under § 1983, a plaintiff must make "particularized allegations" that a conspiracy exists. *GJR Invs. v. County of Escambia, Fla.,* 132 F.3d 1359, 1370 (11th Cir. 1998) (modified by *Swann v Southern Health Partners, Inc.*, 388 F. 3d 834, 837 (11th Cir. 2004) holding that the heightened pleading requirement does not apply to private entities under § 1983). Vague and conclusory allegations suggesting a Section 1983 conspiracy are insufficient. *Fullman v. Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984).

Plaintiff's Complaint simply states that the Defendants acted in concert and conspired with one another to detain, seize, and maliciously prosecute him. The Complaint alleges no facts showing that Defendants reached an understanding to deny Plaintiff's rights and contains insufficient facts to reasonably draw an inference of a

conspiracy. Because Plaintiff's conspiracy claims are conclusory without a particularized allegation to support the claim, Count VI is due to be dismissed.

Because Plaintiff is proceeding *pro se*, the Court will allow him to file an amended complaint. However, Plaintiff is cautioned that he may not bring claims against Stephen Russell, Stephanie Russell, and Deputy Richard Errett who were dismissed from this case with prejudice.

Accordingly, it is now

**ORDERED:**

1. Defendants Dennis Eads, Emily Destephanis, and Justin Trask's Motion to Dismiss ([Doc. 41](Doc. 41)) is **GRANTED**.

2. Plaintiff's Complaint against Eads, Destephanis, and Trask is **DISMISSED without prejudice**.

3. Plaintiff has fourteen days from the date of this Order to file an amended complaint. Should Plaintiff fail to file within the Court's time frame, his case will be dismissed and the case closed.

**DONE** and **ORDERED** in Fort Myers, Florida this 11th day of March 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record
SA: FTMP-2

13